# No. 25-20002

---

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

UNITED STATES OF AMERICA,
Plaintiff-Appellant,

v.

SADE KUYORO,
Defendant-Appellee.

---

On Appeal from the United States District Court
For the Southern District of Texas
Houston Division, Criminal No. 4:21-CR-00222

---

BRIEF OF PLAINTIFF-APPELLANT

---

NICHOLAS J. GANJEI
United States Attorney

CARMEN CASTILLO MITCHELL
Chief, Appellate Division

LAURETTA DRAKE BAHRY
Assistant United States Attorney
Attorneys for Appellant
1000 Louisiana, Suite 2300
Houston, Texas 77002
(713) 567-9102

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of FED. R. APP. P. 28.2.1, have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. Senior District Judge: Hon. Alfred H. Bennett.

2. Magistrate Judge: Hon. Frances H. Stacey.

3. Defendant-Appellee: Sade Kuyoro.

4. Plaintiff-Appellant: United States of America.

5. Counsel for Plaintiff-Appellant: United States Attorney Nicholas J. Ganjei; Former United States Attorney Alamdar S. Hamdani; Assistant United States Attorney Grace Murphy; Assistant United States Attorney Shirin Hakimzadeh; Assistant United States Attorney Tina Ansari; Assistant United States Attorney Carmen Mitchell (on appeal) and Assistant United States Attorney Lauretta D. Bahry (on appeal).

6. Counsel for Defendant-Appellee: Federal Public Defender Darryl Emmanuel Austin; Federal Public Defender Kevin McGuire Cobb; Federal Public Defenders Philip G. Gallagher; Assistant Federal Public Defender Ike Okorafor; Assistant Federal Public Defender Rachel Melby and Assistant Federal Public Defender Scott A. Martin (on appeal).

s/ *Lauretta D. Bahry*
Lauretta D. Bahry
Assistant United States Attorney
Attorney of record for the United States

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

The United States requests oral argument in this Government appeal. Oral argument would significantly aid in this Court's resolution of the fact-intensive issues and legal arguments. Fed. R. App. P. 34(a)(2)(C).

# **TABLE OF CONTENTS**

**Page**

STATEMENT REGARDING ORAL ARGUMENT ....................................i

TABLE OF AUTHORITIES.................................................................vi

STATEMENT OF JURISDICTION.........................................................1

STATEMENT OF THE ISSUE.................................................................1

STATEMENT OF THE CASE ................................................................2

    A.    Course of proceedings and disposition below ........................2

    B.    Introduction...........................................................................3

    C.    The decades-long owner of 5666 Howell Street confirmed that "5666 Howell Street C" never existed............6

    D.    Kuyoro's Illinois bankruptcy petition established that she lived in Illinois during the time she certified on her FEMA application that she lived in Houston........................7

    E.    Kuyoro provided documents to support her FEMA application for "5666 Howell Street C" that were fraudulent or contained materially false representations ...............................................................................8

    F.    The day before the alleged inspection, Kuyoro called FEMA to report that her damaged home had been demolished...........................................................................10

    G.    FEMA representative Pamela Glasschroeder testified about FEMA processes, spurring the two discovery-related objections ...............................................................11

## TABLE OF CONTENTS, cont'd

**Page**

1. The civil recoupment letters .........................................12

2. The email address of the inspector who allegedly inspected the non-existent property at "5666 Howell Street C." ...........................................15

H. The court dismissed the indictment without prejudice in an oral ruling, citing its inherent supervisory powers and prior discovery warnings given in two unrelated cases.........................................................................20

I. The United States filed a motion for reconsideration ..........23

J. Five months later, the court conducted a hearing on the United States's motion to reconsider the dismissal .............24

K. In its written order denying the United States' motion to reconsider dismissal, the court invoked its inherent supervisory power to dismiss the indictment........................29

SUMMARY OF ARGUMENT .................................................31

ARGUMENT ........................................................................34

A. No double jeopardy or limitations bar exists for reinstatement of the indictment and retrial ........................34

B. The district court had no legal basis for dismissal...............35

1. No Rule 16 violation occurred.....................................36

2. No *Brady* violation occurred .......................................42

# TABLE OF CONTENTS, cont'd

**Page**

3.  The district court's inherent supervisory powers did not support dismissal in the absence of a prejudice finding and based upon facts in two unrelated cases ........................................................... 48

CONCLUSION .................................................................... 57

CERTIFICATE OF SERVICE ................................................ 58

CERTIFICATE OF COMPLIANCE ....................................... 59

v

# TABLE OF AUTHORITIES

**Cases**                                                                                                **Page(s)**

*Ballard v. Burton*, 444 F.3d 391 (5th Cir. 2006) ....................................43

*Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988) . 48, 49, 55, 56

*Brady v. Maryland*, 373 U.S. 83 (1963) ..............................................2, 42

*Burks v. United States*, 437 U.S. 1 (1978) ..............................................34

*Evans v. Michigan*, 568 U.S. 313 (2013)..................................................34

*Giglio v. United States*, 405 U.S. 150 (1972) ..........................................14

*Government of Virgin Island v. Fahie*, 419 F.3d 249
      (3rd Cir. 2005) ..................................................................................36, 49

*Griffin v. California*, 380 U.S. 609 (1965)...............................................54

*Powell v. Quarterman*, 536 F.3d 325 (5th Cir. 2008)............................42

*United States v. Accetturo*, 858 F.2d 679 (11th Cir. 1988) .....................49

*United States v. Agurs*, 427 U.S. 97 (1976)..............................................38

*United States v. Armstrong*, 517 U.S. 456 (1996) ...................................36

*United States v. Bauman*, 887 F.2d 546 (5th Cir. 1989) ........................36

*United States v. Breimeister*, 133 F.4th 496 (5th Cir. 2025) .................44

*United States v. Brown*, 303 F.3d 582 (5th Cir. 2002)............................36

*United States v. Brown*, 650 F.3d 581 (5th Cir. 2011)............................47

*United States v. Buckley*, 586 F.2d 498 (5th Cir. 1978)....................36, 42

## TABLE OF AUTHORITIES, cont'd

**Cases**                                                                **Page(s)**

*United States v. Cadet*, 727 F.2d 1453 (9th Cir. 1984)...........................37

*United States v. Campagnuolo*, 592 F.2d 852 (5th Cir. 1979).... 46, 47, 50

*United States v. Carrasquillo-Plaza*, 873 F.2d 10 (1st Cir. 1989)..........37

*United States v. Cessna*, 861 F.3d 121 (5th Cir. 2017).....................34, 42

*United States v. Chesser*, 795 F. App'x 242 (5th Cir. 2019) (unpublished)....................................................................... 43, 45, 46

*United States v. Conder*, 423 F.2d 904 (6th Cir. 1970)...........................37

*United States v. DeCoteau*, 186 F.3d 1008 (8th Cir. 1999)....................49

*United States v. Dennison*, 891 F.2d 255 (10th Cir. 1989) .....................46

*United States v. Derrick*, 163 F.3d 799 (4th Cir. 1998) .................... 43, 45

*United States v. Duran-Gomez*, 984 F.3d 366 (5th Cir. 2020)................40

*United States v. Garrett*, 238 F.3d 293 (5th Cir. 2000) ....................50, 53

*United States v. Greenwood*, 974 F.2d 1449 (5th Cir. 1992) ................1, 2

*United States v. Griffith*, 756 F.2d 1244 (6th Cir. 1985).........................49

*United States v. Hankton*, 51 F.4th 578 (5th Cir. 2022)........................46

*United States v. Hasting*, 461 U.S. 499 (1983) .................... 48, 54, 55, 56

*United States v. Herring*, 602 F.2d 1220 (5th Cir. 1979).......................38

*United States v. Houlihan*, 92 F.3d 1271 (1st Cir. 1996) .......................46

# TABLE OF AUTHORITIES, cont'd

<u>**Cases**</u>                                                                        <u>**Page(s)**</u>

*United States v. Isgro*, 974 F.2d 1091 (9th Cir. 1992) ...................... 54, 56

*United States v. Jordan*, 316 F.3d 1215 (11th Cir. 2003) ................. 37, 42

*United States v. Lamela*, 942 F.2d 100 (1st Cir. 1991) .......................... 54

*United States v. McKenzie*, 678 F.2d 629 (5th Cir. 1982) ...................... 49

*United States v. Miller*, 953 F.3d 1095 (9th Cir. 2020) ......................... 38

*United States v. Morrison*, 449 U.S. 361 (1981) ................................... 49

*United States v. Morrison*, 833 F.3d 491 (5th Cir. 2016) ................. 43, 45

*United States v. Ornelas-Rodriguez,* 12 F.3d 1339 (5th Cir. 1994) ........ 48

*United States v. Osorio*, 929 F.2d 753 (1st Cir. 1991) ..................... 47, 54

*United States v. Payner*, 447 U.S. 727 (1980) ...................................... 48

*United States v. Rainey*, 757 F.3d 234 (5th Cir. 2014) ........................ 1, 2

*United States v. Reeves*, 892 F.2d 1223 (5th Cir. 1990) .............. 36, 37, 39

*United States v. Ross*, 372 F.3d 1097 (9th Cir. 2004) ............................ 49

*United States v. Ross*, 511 F.2d 757 (5th Cir. 1975) ...................... *passim*

*United States v. Santana*, 6 F.3d 1 (1st Cir. 1993) ............................... 49

*United States v. Scott*, 437 U.S. 82 (1978) ........................................... 34

*United States v. Semrau*, 693 F.3d 510 (6th Cir. 2012) ........................ 37

## TABLE OF AUTHORITIES, cont'd

**Cases**                                                                **Page(s)**

*United States v. Sipe*, 388 F.3d 471 (5th Cir. 2004) ......................... 46, 47

*United States v. Stanford*, 823 F.3d 814 (5th Cir. 2016) .................. 43, 46

*United States v. Swenson*, 894 F.3d 677 (5th Cir. 2018) ................ *passim*

*United States v. Williams*, 132 F.3d 1055 (5th Cir. 1998) ..................... 43

*United States v. Williams*, 874 F.2d 968 (5th Cir. 1989) ....................... 54

*United States v. Woodley*, 9 F.3d 774 (9th Cir. 1993) ........................... 54

*United States v. Wright*, 913 F.3d 364 (3rd Cir. 2019) .......................... 49

**Statutes and Rules**

18 U.S.C. 1040(a)(1) ................................................................................ 35

18 U.S.C. § 1343 ...................................................................................... 35

18 U.S.C. § 3231 ........................................................................................ 1

18 U.S.C. § 3282(a) ................................................................................. 35

18 U.S.C. § 3288 ...................................................................................... 35

18 U.S.C. § 3731 ........................................................................................ 1

Fed. R. App. P. 4(b)(1)(B)(i) ..................................................................... 1

Fed. R. App. P. 34(a)(2)(C) ........................................................................ i

5th Cir. R. 28.2.2 ....................................................................................... 1

# TABLE OF AUTHORITIES, cont'd

**Statute and Rules**                                                      **Page(s)**

5th Cir. R. 47.5.4 ...................................................................... 43

## STATEMENT OF JURISDICTION

The district court (Bennett, J.) orally dismissed the indictment without prejudice on May 8, 2024.  ROA.10 (docket entry dated 5/31/2024).[1]  The district court had jurisdiction under 18 U.S.C. § 3231. The United States filed a motion for reconsideration on June 7, 2024. ROA.11, 1335.  After the court denied the motion for reconsideration by written order entered on December 4, 2024, the United States timely appealed the final dismissal ruling on January 2, 2025, under Fed. R. App. P.  4(b)(1)(B)(i).  ROA.11-12, 389-93, 397; *see United States v. Rainey*, 757 F.3d 234, 239 (5th Cir. 2014); *United States v. Greenwood*, 974 F.2d 1449, 1466 (5th Cir. 1992).  This Court's jurisdiction vests under 18 U.S.C. § 3731.

## STATEMENT OF THE ISSUE

After both sides had rested, did the district court err in dismissing the indictment based upon two perceived discovery violations by the United States?

---

[1] "ROA" refers to the record on appeal, which is cited in accordance with 5th Cir. R. 28.2.2.

## STATEMENT OF THE CASE

### A.    Course of proceedings and disposition below.

The United States charged Sade Kuyoro with disaster fraud and two counts of wire fraud stemming from her scheme to obtain benefits from the Federal Emergency Management Agency (FEMA) in the aftermath of Hurricane Harvey.  ROA.16-22.  Kuyoro pled not guilty, a jury was empaneled, and trial began.  On day two of the United States's case, defense counsel orally requested that the indictment be dismissed based upon two alleged *Brady v. Maryland*, 373 U.S. 83 (1963), violations.  ROA.869, 922-26.  After a hearing the following morning, the district court orally dismissed the indictment without prejudice.  ROA.1034.

The United States filed a timely motion to reconsider the dismissal.  ROA.1335-54.  Five months later, the district court held a hearing on the motion and denied reconsideration in a written order.  ROA.389-93, 449-56.  The United States filed this timely appeal.  ROA.12, 397; *see Rainey*, 757 F.3d at 239; *Greenwood*, 974 F.2d at 1466.

**B.** **Introduction**

The United States indicted Kuyoro for filing a FEMA application and receiving disaster-relief funds for a residence that never existed. ROA.16-22. On September 4, 2017, Kuyoro applied for financial assistance from FEMA after Hurricane Harvey struck the Houston area on August 23, 2017. ROA.638, 1067. Kuyoro claimed her rental house at "5666 Howell Street C" sustained hurricane damage. ROA.1067. Based upon her FEMA application and supporting documentation, Kuyoro received $33,000 in disaster relief, including rental, personal property, and transportation assistance. ROA.920, 1301-03.

The United States produced overwhelming trial testimony and documentary evidence that "5666 Howell Street C" never existed and that Kuyoro's supporting documents were all fraudulent. ROA.813, 837-43, 848, 890-93, 901-03, 1067, 1077-83, 1093, 1110-11, 1129, 1138, 1142-43. One piece of evidence the United States did not have — as Kuyoro emphasized to the jury in her opening statement —was testimony from the inspector, a FEMA third-party contractor, who allegedly inspected the non-existent property. ROA.631-32.

3

Evidence about the alleged inspection of a non-existent property played no role in the United States's case.  Nevertheless, the issue arose when defense counsel asked a government witness, the FEMA representative, whether anyone had ever tried to contact the inspector; she answered that she did not know.  ROA.755-56.  Later, the prosecutor asked the lead investigating agent whether he had ever attempted to contact the inspector on Kuyoro's claim.  ROA.893-94.  Although he had attempted to contact the inspector, the agent never received a response.  ROA.894.

After a brief recess, the agent searched his "sent" email folder and found an unanswered email that he had sent to morgan.gobert1@gmail.com" two months before trial.  ROA.373, 1024.  The prosecution immediately gave the defense a copy of the email, which contained only an email address for the inspector of the non-existent property.  ROA.373.  Defense counsel claimed the prosecution's failure to turn over the inspector's email address violated *Brady* because the inspector could have been an exculpatory witness or at least been interviewed.  ROA.922, 925-26.  Accordingly, defense counsel requested a mistrial or a dismissal of the indictment.  ROA.926.

The court considered the inspector email issue in conjunction with another disclosure by the prosecution team, which had also occurred during the second day of trial. When defense counsel asked the FEMA representative whether Kuyoro had ever tried to repay the funds that she received from FEMA, the FEMA representative did not know. ROA.764. After her testimony, the lead case agent searched the FEMA database, and he discovered two civil recoupment letters that FEMA had sent to Kuyoro in 2020. ROA.856-57, 873. Those 2020 letters were not in Kuyoro's 2019 certified FEMA file, which was produced to defense counsel three years before trial. ROA.856, 873, 1336.

The court then dismissed the indictment but concluded that the two prosecutors did not act with malicious or nefarious intent with respect to either discovery issue. ROA.1035. Taken alone, the court held that a different remedy such as a mid-trial continuance would have been sufficient to address both disclosure issues. ROA.1027, 1035, 1058. However, citing to its inherent supervisory powers, the court dismissed the indictment upon its conclusion that a pattern of discovery abuse existed in the United States Attorney's Office for the Southern District of Texas (USAO-SDTX). ROA.391 & n.3, 393, 1017, 1026-27, 1032-36, 1042,

5

1058. The court highlighted by name and cause number two different cases with different prosecutorial teams that had previously appeared in his court. ROA.391 & n.3, 1032-34, 1058.

The facts below establish that neither the mid-trial disclosure of the civil recoupment letters addressed to Kuyoro nor the inspector's email address were material or prejudicial to Kuyoro to justify the extreme sanction of dismissal. The court's reliance upon its inherent supervisory authority to dismiss the indictment based upon warnings given in two unrelated cases with different prosecutorial teams is legally deficient. Reversal of the district court's dismissal order and a remand for reinstatement of the indictment is the proper remedy for the court's error.

## C.  The decades-long owner of 5666 Howell Street confirmed that "5666 Howell Street C" never existed.

By the time of her testimony at trial, Delfina Gutierrez had lived at 5666 Howell Street for over 20 years. ROA.810-11. She confirmed that no "Unit C" had ever existed. ROA.813. Gutierrez had never rented a room to a tenant or had a separate living space apart from her single-family home. ROA.813-14. She never filed a FEMA application after Hurricane Harvey because her home sustained only minimal water damage. ROA.814-16. And she did not know Kuyoro. ROA.813-14.

6

**D.    Kuyoro's Illinois bankruptcy petition established that she lived in Illinois during the time she certified on her FEMA application that she lived in Houston.**

Kuyoro certified on her FEMA application that she sustained loss to her rental home at "5666 Howell Street C" on August 23, 2017. ROA.1067.  But on her March 5, 2018, Illinois bankruptcy petition she averred that in the prior three years, she had never lived anywhere else than Illinois.  ROA.1163, 1201.  She also represented in her petition that she had not suffered any loss due to disaster within a year of filing for bankruptcy.  ROA.1204.

Although no record of any Texas driver's license or identification existed for Kuyoro, federal investigators found an Illinois driver's license for her during the time she sought FEMA damage relief for "5666 Howell Street C" in Houston.  ROA.1067, 1276.  She used the same Illinois driver's license number to open Houston Post Office Box 36366 in 2015, which she designated as her mailing address on her FEMA application. ROA.863-65, 1067, 1286.

**E.    Kuyoro provided documents to support her FEMA application for "5666 Howell Street C" that were fraudulent or contained materially false representations.**

Kuyoro gave FEMA false documents to support her alleged damaged residence at "5666 Howell Street C." First, she represented on her FEMA application that three dependents lived with her at "5666 Howell Street C," including 2 children ages 5 and 8. ROA.1067. FEMA awarded greater assistance to applicants with multiple dependents. ROA.643-44. Kuyoro provided FEMA with alleged daycare expenses from September 11, 2017, through October 15, 2017, for these 2 children. ROA.1110-11.

But on her 2018 Illinois bankruptcy petition, Kuyoro represented that she had no dependents. ROA.1198. Federal investigators found no evidence that Kuyoro had children. ROA.885.

Second, Kuyoro provided FEMA with a purported receipt from Holiday Inn Express in Humble, Texas, for $1,901.12 in rental assistance during her alleged displacement from "5666 Howell Street C" from August 26, 2017, to September 10, 2017. ROA.1078-83. A Humble Holiday Inn representative confirmed that the purported receipt was not generated by that Holiday Inn, citing multiple inaccuracies in the receipt.

ROA.847-48. For example, neither the room nor confirmation number existed and Kuyoro's name was not on the receipt. ROA.850-53. Further, no record of Kuyoro existed in a search of that Holiday Inn's database for the prior 10 years. ROA.853.

Third, Kuyoro's estimate from the Highway 6 AutoNation Collision Center seeking $14,171.48 for damage to her 2010 Chevy Camaro during the hurricane was fake. ROA.1067, 1094-98. A 27-year AutoNation representative from that location testified that the company did not employ the alleged employee who generated Kuyoro's estimate. ROA.842-43. Moreover, the parts listed on Kuyoro's estimate did not match a 2010 Chevy Camaro. ROA.100-01. Nor did the VIN number, claim number, or Kuyoro's name exist in the AutoNation database. ROA.839.

Kuyoro also submitted a purported car registration in support of her FEMA application. ROA.1090. Kuyoro's listed address on her registration was "5666 Howell Street" — without the "C." ROA.1093. But Gutierrez testified that she was the decades-long owner of "5666 Howell Street." ROA.810-11, 813.

9

Fourth, Kuyoro provided an alleged utility bill from July 16, 2017, to August 15, 2017, for "5666 Howell Street" to support her FEMA application for "5666 Howell Street C."  ROA.1067, 1077.  Again, Gutierrez confirmed that she was the decades-long owner of "5666 Howell Street" and no Unit "C" ever existed.  ROA.810-11, 813.

Finally, Kuyoro submitted a fictitious apartment lease, rent receipts, and a utility bill for "2300 Old Spanish Trail Unit 3093" to support her claim of rental assistance during her alleged displacement from "5666 Howell Street C."  ROA.1067, 1129, 1138, 1140, 1142-43.  The investigation confirmed that "Unit 3093" did not exist, and the apartment complex did not have a third floor.  ROA.890-92.

### F.    The day before the alleged inspection, Kuyoro called FEMA to report that her damaged home had been demolished.

FEMA telephone records confirmed that Kuyoro called FEMA on September 28, 2017, to report that her damaged home had been demolished that day.  ROA.431 (Govt. Exh. 1 - DHS_001406),791-93.  However, both Kuyoro's FEMA application and inspection report indicated that "5666 Howell Street C" was purportedly inspected in

Kuyoro's presence the following day — September 29, 2017 — the day after she reported its alleged demolition.  ROA.791-93, 1068, 1150.

### G.    FEMA representative Pamela Glasschroeder testified about FEMA processes, spurring the two discovery-related objections.

FEMA representative Pamela Glasschroeder explained that after a person applied for FEMA relief, an inspection of the damaged property occurred.  ROA.646-47.  Inspectors were not FEMA employees but third-party contractors, whom FEMA contracted with to quickly help with a widespread disaster like Harvey.  ROA.647.  At the time of Harvey, contracted inspectors took pictures of damaged property to justify their inspection reports.  ROA.647.  However, only the inspection reports were uploaded to the database containing an applicant's FEMA file, not the photographs.    ROA.647,  754-55.    Cheryl  Adegbembo,  a  state representative at the "Other Needs Assistance Program" (ONAP), which also provided disaster-relief funds to Kuyoro, relied upon the information in the FEMA file to award disaster-relief funds.  ROA.822.  Adegbembo explained  that  sometimes  FEMA-contracted  inspectors  would  not physically visit a damaged property; instead, they conducted a phone call

11

with an applicant and relied upon the applicant's "word of mouth" about his or her damage. ROA.831.

1.     The civil recoupment letters

During the second day of trial, defense counsel asked Glasschroeder whether anyone from FEMA had "asked for any money back" from Kuyoro and, if so, how much. ROA.764. Glasschroeder testified that someone from FEMA had asked for the money back, but she did not know the amount. ROA.764.

During a lunch break a few hours later, lead investigator Mickey Johnson, a Special Agent with the Department of Homeland Security Office of Inspector General, searched the FEMA database. ROA.856-57. He discovered two civil recoupment letters from 2020, totaling 6 pages, that FEMA had mailed to Kuyoro at her Houston P.O. Box. ROA.375-80, 856. The prosecutors immediately gave them to defense counsel. ROA.375-80, 856. The letters from FEMA requested that Kuyoro repay over $13,000 in housing and rental assistance that had been improperly awarded on her claim. ROA.375-80.

As the prosecutor explained to the court, FEMA certified Kuyoro's file in 2019, which contained her application, supporting documents, all

12

correspondence to and from FEMA, FEMA's notes about Kuyoro's telephone calls, and the inspection report. ROA.856, 873, 1063-64, 1336. The prosecution received this 2019 certified version from FEMA and gave it to defense counsel after the indictment was filed in 2021. ROA.856, 873, 1336. The 2020 recoupment letters were not created at the time the file was certified in 2019. ROA.856, 873, 1336. The 2019 version, which the United States used as "Exhibit 1" of its case-in-chief was the same version given to defense counsel. ROA.856, 873, 1063-64, 1336. However, a few days before trial the United States gave defense counsel emails between Special Agent Johnson and a FEMA accounting technician about civil recoupment efforts that had been made in Kuyoro's case. ROA.382-85, 1342. Thus, by the time of trial, defense counsel knew that as of January 2024, Kuyoro had not made any repayments to FEMA. ROA.382-85.

Defense counsel argued that the late disclosure hampered his ability to cross-examine Special Agent Johnson, who had not yet testified. ROA.857. The prosecutor advised the court that a United States postal inspector would testify before Special Agent Johnson. ROA.857. The prosecutor also notified the court that she had advised defense counsel

13

that she did not intend to question Special Agent Johnson about any recoupment efforts. ROA.856.

After the postal inspector testified, defense counsel argued that the late disclosure of the civil recoupment letters violated *Giglio v. United States*, 405 U.S. 150 (1972), and potentially *Brady*. ROA.869. Counsel gave no explanation for how the letters were exculpatory other than that their tardy disclosure "potentially" hindered his cross-examination of Special Agent Johnson. ROA.869. Implicitly rejecting defense counsel's argument that the letters "color[ed] [Special Agent Johnson's] testimony" the court replied, "I do not see how this has harmed the defense at this point" because the Special Agent had not yet testified. ROA.871. The court gave defense counsel time to review the two letters, and the prosecutor acknowledged that the government was "very late in getting [the recoupment letters] to the defense." ROA.872. To "cure the issue," the prosecutor offered to "not elicit any kind of testimony about whether recoupments were made," "not object to a line of questioning from the defense that there was no evidence of recoupment letters," and not to object in closing that the government failed to provide any evidence of recoupment efforts. ROA.872-83. After he reviewed the letters, defense

14

counsel informed the court that he would not ask Special Agent Johnson about them.  ROA.873.

The court informed the prosecution that it was "going to leave for a later time a discussion about the late production of these documents." ROA.874.  The court referred the prosecution to two prior instances of late disclosures in two different cases tried before the court:

> As you and your office well know, this Court has had to deal with this issue multiple times.  The U.S. Attorney himself appeared in this courtroom to hear me express my displeasure regarding the United States' obligations in regards to production of documents.  I'm not going to deal with this mid trial, but I assure you this issue is not over.

ROA.874.

### 2.  The email address of the inspector who allegedly inspected the non-existent property at "5666 Howell Street C."

On cross-examination, defense counsel asked Glasschroeder whether anyone from FEMA had reached out to the third-party inspector with the pseudonym "V523534466" who was listed on Kuyoro's inspection report.  ROA.755-56, 1150.  Glasschroeder testified that she did not know. ROA.756.

When Special Agent Johnson testified later that day, the prosecutor asked him whether he had attempted to contact the inspector.

15

ROA.893-94.  Special Agent Johnson testified that he had attempted to do so but received no response.  ROA.894.

After a brief recess, Special Agent Johnson searched his "sent" email folder and found an unanswered email that he had sent two months before trial to an email address he had received from FEMA.  ROA.373, 925, 1024.  The prosecution immediately gave the defense a copy of the Special Agent Johnson's email to the person who allegedly inspected the non-existent residence at "5666 Howell Street C":

From: Johnson, Mickey
To: Murphy, Grace (USATXS); Hakimzadeh, Shirin (USATXS); Torres, Anna (USATXS)
Subject: [EXTERNAL] Fwd: Inspection questions
Date: Tuesday, May 7, 2024 3:08:29 PM

---

From: Johnson, Mickey <mickey.johnson@oig.dhs.gov>
Sent: Tuesday, March 5, 2024 4:57 PM
To: morgan.gobert1@gmail.com <morgan.gobert1@gmail.com>
Subject: Inspection questions

Hello,

I am working a FEMA fraud case and I have some questions that I'm hoping you can help me clear up.
When is a good time for you to discuss?

Thanks,

Mickey Johnson
Special Agent
Department of Homeland Security
Office of Inspector General
Houston Field Office
Desk: (713) 212-4323  Cell: 281-520-8167
mickey.johnson@oig.dhs.gov



ROA.373.

Defense counsel asserted at a side bar that the government's failure to turn over the inspector's email address "potential[ly]" violated *Brady* without any explanation of its exculpatory value. ROA.922. The court took a brief recess so that defense counsel could speak with Special Agent Johnson about his attempt to contact the inspector. ROA.922-23.

17

After the recess, the court asked why the prosecution had not produced the email address in discovery, and one of the prosecutors answered, "Human error." ROA.925. The court concluded that the inspector's email amounted to a second occurrence of non-disclosure by the government. ROA.925. Defense counsel argued that the non-disclosure violated *Brady* because, "This is a potential exculpatory witness that we were not aware on how [sic] - - that the government had the information on and did not provide it to us." ROA.925. Defense counsel requested a dismissal or alternatively, a mistrial based upon the alleged *Brady* violation. ROA.926. Defense counsel stressed that the inspector was "an exculpatory witness that we could have called or, at the very least, interviewed." ROA.926.

The court took the issue under advisement and the defense cross-examined Special Agent Johnson about his attempted contact with the inspector. ROA.926. Special Agent Johnson confirmed that in early 2024 he had sent one email to the email address FEMA had given him, but he received no response. ROA.930. After the conclusion of the Special Agent's testimony, the government rested. ROA.953.

18

Outside the presence of the jury, defense counsel informed the court that it would not put on a defense and requested a judgment of acquittal under Federal Rule of Criminal Procedure 29. ROA.953-54. The district court did not address the Rule 29 motion. ROA.955. Instead, the court stated that it had "some history" with the USAO-SDTX failing to disclose information. ROA.955. The court cited two cases by name and cause number. ROA.956. First, the court cited *United States v. Swiencinski*, No. 4:18-CR-368, where it concluded that the prosecution had failed to turn over *Brady* material for a third of its witnesses. ROA.956. The court referenced its conclusion that while it was "greatly dissatisfied," the government's conduct was "not malicious or intentionally fraudulent." ROA.956.

Second, the court cited *United States v. Olivares-Calderon*, No. 4:21-CR-82, explaining that the government's failure to turn over information "was not outrageous or shocking to the universal sense of justice as to warrant dismissal of the indictment." ROA.956. Nevertheless, the court referred to its warning given in *Olivares-Calderon* that "any future conduct not meeting [the Court's] standard could lead to dismissals as the appropriate remedy." ROA.956.

19

The court announced that this third discovery complaint, regarding the inspector's email address and the civil recoupment letters, occurred less than a month after the *Olivares-Calderon* warning.  ROA.956-57.  Concluding that this third instance amounted to "shocking conduct" by the USAO-SDTX, the court gave the prosecutors overnight to respond with the deadline of 8:30 the following morning.  ROA.957. Just before midnight, the United States filed a response asserting that the inspector's email address and the civil recoupment letters were not *Brady* material.  ROA.1328-34.

**H.    The court dismissed the indictment without prejudice in an oral ruling, citing its inherent supervisory powers and prior discovery warnings given in two unrelated cases.**

When trial resumed on the next morning, the court did not conduct any legal analysis into the exculpatory, material, or prejudicial effect of the perceived discovery violations.  Rather, the court concluded "looking at what *Brady* requires" that "without question" the civil recoupment letters and the inspector's email address "should have been turned over" to the defense.  ROA.1026.  The district court also unequivocally concluded that the prosecutors did not act with any "malicious or nefarious intent" in the mid-trial disclosures.  ROA.1035.  The court

20

explained that "it was not considering this case simply on its face, but as a pattern that this office had taken before this particular Court" of "failing to disclose materials to the defense." ROA.1017. The court believed that "taken by itself these particular violations could be dealt with through perhaps a continuance of this case." ROA.1032. The court stated, however, that it "has a history, a very recent history" with both "the prosecutor's office, although not these particular prosecutors" and "main justice." ROA.1032. The court again discussed *Swiencinski* and *Olivares-Calderon*. In both those cases, Judge Bennett declared mistrials based upon *Brady* violations. ROA.1032-34. The court recalled in *Swiencinski* that the prosecutors did not act with nefarious intent or motive but nonetheless "fell short of the conduct expected of prosecutors appearing before it." ROA.1033. Likewise, the prosecutors did not act in bad faith in *Olivares-Calderon*, but the court emphasized that it had given a warning, which the court again recited from the day before: "any future conduct not meeting the standard could lead to dismissals as the appropriate remedy." ROA.1034.

The court explained that it viewed this case as the "third time the Court is faced with a similar fact pattern." ROA.1034. Citing to its

21

inherent powers to remedy a statutory or constitutional violation, to preserve judicial integrity, and to defer future illegal conduct, the court reiterated its warning issued in *Olivares-Calderon*: "I want it to be known I meant exactly what I said [in *Olivares-Calderon*] regarding the expected conduct of the prosecutors appearing before this Court." ROA.1034.

The court further clarified that, although it did not believe that the "individual prosecutors" involved here had "malicious or nefarious intent," and "if this case was taken by itself, perhaps this particular result would not be warranted," the court believed it was appropriate to consider this case "as a whole" with *Swiencinski* and *Olivares-Calderon*. ROA.1035. Because of those two cases and the fact that the court had "previously warn[ed] that future conduct like this would result in dismissal," the court believed that dismissal was an appropriate sanction to send a message for him and for his colleagues in the Southern District of Texas:

> I am putting down a marker for this Court and my colleagues. This conduct is unacceptable. Something is amiss. I do not do this lightly. And again this is done without prejudice. In the wisdom of the United States Attorney, [if] he believes that a re-indictment is necessary and appropriate, he can take that particular step. This prosecution is at an end.

22

ROA.1035.

The court admonished the two prosecutors that this ruling was not "solely on your shoulders." ROA.1036. Rather, the dismissal sanction came as a result of being at "the tail end of three cases that the Court just outlined; and so I want to make clear to you again that part of what you're shouldering is prior conduct from other colleagues where the Court has outlined conduct that was unacceptable." ROA.1036.

In the presence of the jury, the district judge explained that the dismissal was based upon discovery violations committed by these and other prosecutors in different cases. ROA.1037.

## I.    The United States filed a motion for reconsideration.

The United States made four arguments in its motion for reconsideration: (1) the prosecution had no obligation under Federal Rule of Criminal Procedure 16 to disclose the civil recoupment letters or the inspector's email address because neither was material to Kuyoro's defense; (2) Because the inspector's email address and the civil recoupment letters were turned over during trial, dismissal would be appropriate only if Kuyoro was prejudiced by the tardy disclosure, which she was not; (3) dismissal is an extreme sanction reserved for

23

contumacious prosecutorial misconduct, which the court found absent here; and (4) no pattern of pervasive prosecutorial misconduct existed in the USAO-SDTX.  ROA.1335-54.

Kuyoro summarily replied that the district court had ruled correctly, and should the court require a "more in-depth response" the defense would provide it.  ROA.359.

### J.    Five months later, the court conducted a hearing on the United States's motion to reconsider the dismissal.

At the outset of the hearing on the United States's motion to reconsider, the court expressed dissatisfaction with the United States's decision to file a motion to reconsider instead of reindicting the case.  ROA.1041-42 ("I thought that the Government would take the reprimand and simply reindict"); 1058 ("I understand that the Government would prefer not to have a ruling in place that suggests that it did not live up to its Rule 17[sic] obligations and/or *Brady* obligations.").

The prosecutor responded that under the proper legal standards for reviewing tardy disclosures, whether under *Brady* or Rule 16, dismissal was an improper sanction.  ROA.1041-43.  ROA.1042-43.  The prosecutor argued that the burden rested with the defense to establish that the inspector's email address and the civil recoupment letters were material

and their mid-trial disclosures were prejudicial — a burden the defense could not meet under the facts. ROA.1043-44. She reminded the court that the defense was aware of the salient facts surrounding the inspector and the recoupment letters. ROA.1049-50. Namely, defense counsel had acknowledged that the FEMA documents established Kuyoro's presence at the alleged inspection of the non-existent property. ROA.1028, 1045-46, 1049-50. Kuyoro indisputably possessed the inspection report with the inspector's identifying pseudonym in 2021 shortly after the indictment issued. ROA.1028, 1045-46, 1049-50. Moreover, the defense had the government's witness list, which did not contain the inspector, four months before trial. ROA.1051. Kuyoro exercised no reasonable diligence to find the inspector. ROA.1051. Instead, the prosecutor argued that she used the absence of the inspector as a defense and later as support for a *Brady* violation:

> [T]he defense has to exercise reasonable diligence as well. And when we look at the record here, in opening statement, Your Honor, the first thing that came out of defense counsel's mouth was about the inspection, and the fact that the jury would not hear from the inspector. This was critical to their case. This was going to be their argument to the jury.
>
> The Government's position is you can't then turn around and make a defense argument a *Brady* violation. You can't have it both ways, right. You knew there was not going to be an

inspector taking the stand. You had - - they had our witness list in February Your Honor. Four months in advance of this trial, they had the witness list. They knew there was not going to be an inspector. So, they can't turn around and say, we're not going to ask the Government for this information. We're not going to express any sort of interest in knowing who this person might be. We're not going to ask our own client about it, but instead we're going to wait until the very end of the case, and we're going to use it as a sword to allege a *Brady* violation.

ROA.1051.

Defense counsel responded that the inspector's email address and the civil recoupment letters were material because they went to "the heart of the issue." ROA.1045. Defense counsel speculated that the inspector would have given exculpatory information, namely, that he or she had inspected the property, took pictures of it, and verified Kuyoro's driver's license. ROA.1045-47.

The court concluded that the inspector's email address and the civil recoupment letters were discoverable because the United States could not independently determine for the defense what was "material":

● So when we talk about whether or not something is material, I'm hearing that the Government did not think it was material. And if I remember from the trial, the Defense took a 180 degree different position from the Government as to whether or not that was material. So, I do take exception to the Government continuing to characterize the failure to turn over this contact information for this person as non-

26

material.

\* \* \*

● I was somewhat taken aback by the Government's position as to its position that it could determine what the Defense would view as material. Again, I understand from your perspective that you do not think it's material, which you're entitled to reach that conclusion.

But in this instance, having this person's, I think it was an email address, deciding it was not material to you, and then using that as a basis not to turn it over, or the agent not to turn it over, such that the Defense could also independently reach that same conclusion, that was the disconnect that I was having regarding how important or material that information could have been.

ROA.1043, 1047.

The prosecutor immediately corrected the court on any misapprehension that the United States purposely withheld the inspector's email address:

Your Honor, I think that the issue is that this is being characterized as a conscious decision on the part of the Government to withhold. There were 11,000 pages of discovery turned over in this case, including the agent's emails. The only reason that this email was not picked up was because it did not have the defendant's name in it.

It didn't have the defendant's name in it, and so that was one reason, and it was in his sent box. It was an unanswered email. So, I want to make really clear that this was not a conscious decision on the part of the agent or the prosecutors handling this case to withhold information. In fact, as soon as it came out on his direct examination, what did we do? We

27

immediately went and asked him to retrieve the email. He forwarded it to us, and we immediately turned it over to the Defense.

ROA.1048. The court agreed that the prosecutors exhibited no malicious intent but remained undeterred in its belief that the United States could not rebut the defense's assertion of materiality:

> ● The pushback remains the same on the argument when the Government takes the position regarding what was material because, again, I believe that the lawyers across the room get the opportunity to determine as to what is material to them.
>
> * * *
>
> ● One thing I am unmoved on is whether or not this information was material. And, again, with all respect to the Government, you don't get to make that determination for the Defense.

ROA.1049, 1059.

The court reiterated that this case represented a pattern of discovery abuse by prosecutors of the Southern District of Texas:

> ● As I stated on the record, this was the third, the caboose, of a long line of cases that the Court had dealt with.
>
> * * *
>
> ● This case happened at a very unusual time for the Court, based upon two other cases that preceded it, one of which I'm still dealing with the aftermath of. It's on my docket for later this afternoon, as a matter of fact. But this *Swiencinski* case and *Calderon* case, which preceded this particular case, the Court faced similar issues regarding the failure to disclose

28

information. And so in *Swiencinski*, the Government has stood in this courtroom and admitted that they did not live up to what they should have done, and that that was a failure, and that they were addressing that, and I've been told that certain steps have been taken to address those issues. Following that, the Court was involved in, again, the *Calderon* case, where another failure to disclose had occurred. And then this case.

In hindsight, for the Court, the ability to have treated - - if this case had happened independently, perhaps another remedy would have been appropriate, perhaps a mid-trial continuance to allow the Defense to perhaps look into this witness. I do not know. But I do know that when it occurred, it was, again, the tail end of three cases.

ROA.1042, 1058.

The court rejected defense counsel's request to dismiss the indictment with prejudice: "I tried to make clear at the time that my ruling should not be taken to impugn the character or reputation of the lawyers who were appearing before me in that case, and that is still my position." ROA.1057.

> **K.    In its written order denying the United States' motion to reconsider dismissal, the court invoked its inherent supervisory power to dismiss the indictment.**

Just as with the oral order issued during the May hearing, the December written order contained no legal analysis under *Brady* or Rule 16. The court merely concluded that the United States erroneously determined that the inspector's email address and the civil recoupment

29

letters were immaterial to the defense:

> Specifically, it is unknown what the inspector could or would have testified to. It is unknown if the inspector even attempted an inspection of the property. But what is clear is that Kuyoro was denied the opportunity to pursue the same action the Government took, emailing the inspector to determine if he had relevant information, because the Government did not turn over the evidence it had it its possession.  Just as disappointing, the Government argued at trial and again at the November 15 hearing that any attempt to contact the inspector would have been futile, and thus the failure to turn over the inspector's contact information was of no consequence. *The Government does not have the ability to unilaterally determine what is and is not relevant.*

ROA.392 (emphasis added).

Invoking its supervisory powers to dismiss an indictment, the court referenced a "pattern of discovery violations in other cases before the Court."  ROA.391 n.1 & 392-93 (citing *Olivares-Calderon* and *Swiencinski*).  The court reaffirmed that the prosecutors did not act intentionally or in bad faith but "remaine[ed] of the opinion that the Government's failure to turn over evidence in this case, paired with the pattern of discovery violations in other cases before the Court warrants the sanction of dismissal without prejudice." ROA.392-93.

## SUMMARY OF ARGUMENT

The district court erred in dismissing the indictment. Without any analysis under Federal Rule Criminal Procedure 16 or *Brady* to the facts of the case, the court relieved Kuyoro of her burden to show that the evidence was material and prejudicial. Instead, the court concluded "without question" that the mid-trial disclosure of the civil recoupment letters and the inspector's email address were discovery violations warranting this extreme sanction.

Invoking its inherent supervisory powers, the court cited two prior cases in which it had granted mistrials based upon discovery violations and concluded that a pattern of discovery abuse existed in the USAO-SDTX. Although repeatedly stressing that the prosecutors here did not act in bad faith and the mid-trial disclosures could have been cured by a continuance, the court nevertheless tied its decision to a warning given in a prior case that any future discovery issues would be met with dismissal.

Whether the court's dismissal is based exclusively on its supervisory powers or in combination with Rule 16 or *Brady*, the facts of this case do not support this drastic sanction. Under Rule 16, Kuyoro

31

cannot show that the 2020 civil recoupment letters were material to her cross-examination of Special Agent Johnson because he had not testified at the time of the disclosure, she possessed emails establishing that as of January 2024 she had not repaid FEMA on any recoupment efforts, and defense counsel chose not to use the two letters at trial after he reviewed them.

Nor can she show that the inspector's email address was material because the total evidence established that Kuyoro filed a claim on a property that never existed, provided FEMA with fraudulent supporting documents, and advised FEMA that "5666 Howell Street C" had been demolished the day before the alleged inspection occurred. Kuyoro knew months before trial that the inspector was not on the witness list and she possessed the inspection report identifying the inspector by a pseudonym three years before trial.[2] Had she been present at the alleged inspection as she argued to the jury and to the court, she would have zealously pursued finding the inspector of the non-existent property. Instead,

---

[2] The COVID-19 pandemic-related backlog caused the delay between the April 2021 indictment and the May 2024 trial.

32

Kuyoro used the inspector's absence as a defensive theory during opening argument and during the Government's case.

Because the evidence was indisputably turned over mid-trial, it was not suppressed under *Brady* and Kuyoro cannot establish prejudice. The court's failure to conduct a prejudice analysis is an abuse of discretion in this Circuit.

Where, as here, a district court dismisses an indictment under its inherent supervisory powers for perceived discovery violations without conducting a prejudice analysis, it commits reversible error under Supreme Court and Fifth Circuit precedent. Further, after a prejudice finding, which is absent here, a district court is required to weigh distinct factors to determine an appropriate sanction, which is also absent here.

The United States is unaware of any authority warranting the "collective sanction" imposed here based upon two unrelated cases with different prosecutorial teams, one outside the USAO-SDTX. Whether grounded in Rule 16, *Brady*, or its supervisory authority, the district court failed to perform the requisite legal analyses before imposing this draconian sanction that impugned the integrity of the prosecutors and

33

the USAO-SDTX. Accordingly, the United States respectfully requests that the dismissal order be reversed, and the indictment be reinstated.

## ARGUMENT

### A. No double jeopardy or limitations bar exists for reinstatement of the indictment and retrial.

As a threshold matter, neither the Double Jeopardy Clause nor the statute of limitations present a hurdle to reinstatement of the indictment for new trial by this Court. The double jeopardy doctrine bars retrial when the defendant has been acquitted or when an appellate court reverses on insufficiency grounds. *Burks v. United* States, 437 U.S. 1, 16 (1978). However, where the district court's dismissal of an indictment was a "[p]rocedural dismissal" that was "unrelated to factual guilt or innocence," Double Jeopardy is not implicated by reinstatement of the indictment. *See Evans v. Michigan,* 568 U.S. 313, 319 (2013); *United States v. Scott,* 437 U.S. 82, 98 & n.11 (1978); *United States v. Cessna,* 861 F.3d 121, 140 (5th Cir. 2017).

The district court made clear that its dismissal was based upon the government's perceived discovery violations "unrelated to factual guilt or innocence." ROA.389-93; *see Evans,* 568 U.S. at 319-20; *Scott,* 437 U.S. 98 & n.11. The defendant sought reconsideration on the dismissal being

34

without prejudice, consistent with an understanding that a new trial was otherwise possible under the court's ruling. ROA.393, 1057. Indeed, the district court expected the United States to reindict and retry Kuyoro, further indicating that the court did not understand its dismissal order to be an acquittal for Double Jeopardy purposes. ROA.1041-42.

Likewise, no limitations bar exists even though the indictment was dismissed after the five-year limitations period had expired. The indictment alleged that Kuyoro committed disaster relief fraud in violation of 18 U.S.C. § 1040(a)(1) from September 2017 to May 2018 and two counts of wire fraud in violation of 18 U.S.C. § 1343 in October 2017. ROA.17, 21. The grand jury returned the indictment on April 28, 2021, within the five-year limitations period for the charged offenses. ROA.16; 18 U.S.C. § 3282(a). The order of dismissal became final on December 4, 2024, after the expiration of limitations. ROA.11, 389. Nevertheless, 18 U.S.C. § 3288 expressly permits the United States to reindict Kuyoro after an appeal under these circumstances.

## B.    The district court had no legal basis for dismissal.

It is somewhat unclear whether the district court predicated its dismissal of the indictment here on violations of Rule 16, *Brady*, on its

35

own supervisory powers, or on some combination thereof.  ROA.391, 393, 1026-27, 1034-35, 1058; *see Government of Virgin Island v. Fahie*, 419 F.3d 249, 258 (3rd Cir. 2005).  Regardless of the exact basis for dismissal, a plenary review of the entire record establishes that the district court erred.  *See United States v. Bauman*, 887 F.2d 546, 550 (5th Cir. 1989).

### 1.    No Rule 16 violation occurred.

Upon a defendant's request, Fed. R. Crim. P. 16(a)(1)(E)(i) and (ii), requires the prosecution to disclose documents in its "possession, custody, or control" that are "material to preparing the defense" or that the prosecution "intends to use in its case-in-chief at trial."  *See United States v. Reeves,* 892 F.2d 1223, 1226 (5th Cir. 1990); *United States v. Buckley*, 586 F.2d 498, 506 (5th Cir. 1978).  De novo review applies to Rule 16 claims.  *See United States v. Brown*, 303 F.3d 582, 589 (5th Cir. 2002) (citations omitted).

When a defendant asserts a disclosure violation, it is the defendant's burden to make a "prima facie showing of materiality."  *See Buckley*, 586 F.2d at 506 (citing *United States v. Ross*, 511 F.2d 757, 762-63 (5th Cir. 1975)).  Information is "material" only if it "counters the government's case in chief."  *United States v. Armstrong*, 517 U.S. 456,

462 (1996); *see United States v. Semrau*, 693 F.3d 510, 529 (6th Cir. 2012). The defendant must demonstrate that had the evidence been disclosed, it would have significantly altered the quantum of proof in her favor. *Reeves*, 892 F.2d at 1226 (*citing Ross*, 511 F.2d at 763). Finally, the extensiveness of the material that the Government did produce, the availability of the disputed material from other sources, including from the defendant's own knowledge, must also be considered. *Ross*, 511 F.2d at 763.

Conclusory allegations that non-disclosed information is "material to the defense" or would have altered defense preparation or tactics are insufficient to establish a Rule 16 violation. *See United States v. Jordan*, 316 F.3d 1215, 1250 (11th Cir. 2003); *United States v. Carrasquillo-Plaza*, 873 F.2d 10, 12-13 (1st Cir. 1989); *United States v. Cadet*, 727 F.2d 1453, 1466 (9th Cir. 1984); *Ross*, 511 F.2d at 762-63; *United States v. Conder*, 423 F.2d 904, 910 (6th Cir. 1970).

Here, the court erroneously accepted Kuyoro's conclusory arguments that the recoupment letters and inspector's email address went to "the heart of the issue" and her speculation that the inspector's email address would have led to exculpatory testimony. ROA.857, 1045-

47; *see Ross*, 511 F.2d at 762-63.  The practical effect of the court's ruling means that any non-disclosures are automatic error without regard to their materiality in the context of the evidence.  *See United States v. Agurs*, 427 U.S. 97, 112 (1976).  Indeed, the court chastised the prosecutor for arguing that Rule 16 requires specific allegations of materiality, which the defense could not show on the facts.  ROA.392, 1043-44, 1049, 1059.

With respect to the recoupment letters, defense counsel argued that the late disclosure hindered counsel's ability to cross-examine Special Agent Johnson.  ROA.857, 1045.  *See Ross*, 511 F.2d at 762-63.  Implicitly rejecting defense counsel's argument, the court acknowledged that Special Agent Johnson had not yet testified when the defense received the two recoupment letters.  ROA.871.  Kuyoro cannot show materiality because she abandoned the recoupment issue after reviewing the two letters during a trial break.  ROA.873.  Further, repayment of funds is not a defense to fraud, defeating materiality.  *See United States v. Miller,* 953 F.3d 1095, 1103 (9th Cir. 2020); *United States v. Herring,* 602 F.2d 1220, 1228 (5th Cir. 1979).

With respect to the inspector's email address, defense counsel speculated that the inspector was "a potential exculpatory witness" who inspected the property, took pictures of it, and verified Kuyoro's driver's license. ROA.1045-47. Before the court's oral ruling of dismissal, the Government had rested, and the defense informed the court that it did not intend to put on a defense. ROA.953. Thus, the total evidence established that Kuyoro filed a claim on a property that never existed, provided FEMA with fraudulent supporting documents, and advised FEMA that the alleged property had been demolished the day before the alleged inspection occurred. ROA.791-93, 813, 837-43, 848, 890-93, 901-03. Bankruptcy records demonstrated that Kuyoro lived in Illinois at the time of Hurricane Harvey and the investigation uncovered only an Illinois driver's license for Kuyoro, which she used to open the Houston P.O. Box associated with her FEMA application. ROA.1067, 1286. By accepting Kuyoro's conclusory assertions of materiality, the district court improperly relieved Kuyoro of her burden to show how the recoupment letters and the email address of the inspector of a non-existent property would have altered the quantum of proof in her favor. *See Reeves*, 892 F.2d at 1226.

Nor did the court evaluate the extensiveness of the material that the Government had produced, and the availability of the disputed material from other sources, including Kuyoro's own knowledge, as required by this Court's precedent. *See Ross*, 511 F.2d at 763.

By the time of trial, the United States had produced over 11,000 documents to the defense, in compliance with the permissive "open file" discovery policy of the USAO-SDTX. ROA.1048, 1052. Thus, the "open file" USAO-SDTX discovery policy exceeded the United States's Rule 16 obligations. ROA.1052; *see United States v. Duran-Gomez*, 984 F.3d 366, 377 (5th Cir. 2020).

Kuyoro possessed emails between Special Agent Johnson and the FEMA accounting technician about recoupment efforts, confirming that no repayment had been made as of January 2024. ROA.382-85, 1342. Had Kuyoro wanted the physical letters, defense counsel could have requested them from the prosecution. Moreover, since the letters were mailed to Kuyoro at the P.O. Box where she sent and received all communication from FEMA about her claim, the logical conclusion is that she had the letters. ROA.375, 379, 1067,1286. And of course, whether Kuyoro had repaid any FEMA funds was within her personal knowledge.

40

*See Ross*, 511 F.2d at 763. Further, whether she had made any repayments had no bearing on her guilt or innocence, was not pertinent to the United States's case-in-chief and was not an affirmative defense.

Finally, in 2021, defense counsel had the 2019 certified FEMA file that contained the inspection report by inspector "V523534466." According to the report, this inspector allegedly inspected "5666 Howell Street C," verified Kuyoro's driver's license as proof of occupancy and documented flood damage to the bedrooms, dining room, kitchen, living room, and a variety of appliances. ROA.1149-51, 1154, 1157. Four months before trial, Kuyoro knew that the inspector was not on the Government's witness list. ROA.1051, 1324. Defense counsel hypothesized that the inspector could have testified that he or she took pictures of the property and examined Kuyoro's driver's license. ROA.1045-47. Had a legitimate inspection of "5666 Howell Street C" occurred in Kuyoro's presence, she would have zealously pursued information about the inspector. She did not. Instead, defense counsel argued during opening statement that the absence of the inspector was an insurmountable weakness in the Government's case. ROA.631-32. The facts here establish that the inspector would only have provided

41

inculpatory evidence about the "inspection" of a non-existent property. Accordingly, the Court improperly accepted defense counsel's speculative and factually implausible arguments without conducting the requisite materiality analysis. *See Buckley*, 586 F.2d at 506; *Jordan*, 316 F.3d at 1250. This was reversible error.

### 2.    No *Brady* violation occurred.

This Court reviews de novo whether the United States violated its *Brady* obligations. *United States v. Cessa*, 861 F.3d 121, 128 (5th Cir. 2017). The government violates *Brady* when it suppresses evidence that is "favorable to [the] accused" and is "material either to guilt or punishment." *Brady*, 373 U.S. at 87.

This Circuit has held, however, that evidence that is "turned over to the defense *during* trial" is not "considered suppressed." *United States v. Swenson*, 894 F.3d 677, 683 (5th Cir. 2018) (emphasis in original) (citing *Powell v. Quarterman,* 536 F.3d 325, 335 (5th Cir. 2008)). Whether the United States can show favorability or materiality "is irrelevant" because evidence introduced during trial was not suppressed. *Id.* Accordingly, where a defendant challenges the tardiness of evidence that is disclosed during trial, the "analysis 'turns on whether the

42

defendant was prejudiced by the tardy disclosure.'" *Id.* (quoting *United States v. Morrison,* 833 F.3d 491, 508 (5th Cir. 2016)); *United States v. Williams,* 132 F.3d 1055, 1060 (5th Cir. 1998); *United States v. Chesser,* 795 F. App'x 242, 244-45 (5th Cir. 2019) (unpublished).[3] Mere speculation that a trial might have gone differently is insufficient to establish the requisite prejudice from the tardy disclosure. *Swenson,* 894 F.3d at 683 (citing *United States v. Stanford,* 823 F.3d 814, 841 (5th Cir. 2016)); *United States v. Derrick,* 163 F.3d 799, 810 (4th Cir. 1998); *Chesser,* 795 F. App'x at 245.

Both the civil recoupment letters and the inspector's email address were indisputably turned over during the second day of trial, therefore no suppression occurred under *Brady. See Swenson,* 894 F.3d at 683. Accordingly, under this Circuit's precedence, the district court was required to analyze whether the trial disclosures prejudiced the defense. *Id.* (*citing Morrison,* 833 F.3d at 508); *Williams,* 132 F.3d at 1060; *Chesser,* 795 F. App'x at 244-45.

---

[3] Unpublished cases from this Circuit after January 1996 are not controlling precedent but may be considered as persuasive authority. *Ballard v. Burton*, 444 F.3d 391, 401 & n.7 (5th Cir. 2006); 5th Cir. R. 47.5.4.

Here, the district court completely ignored the mandatory prejudice inquiry. *Swenson*, 894 F.3d at 683 (*citing Morrison*, 833 F.3d at 508). The court was indeed aware of its obligation to apply a prejudice analysis under *Swenson*. Two weeks before its dismissal in this case, Judge Bennett issued an order in *Olivares-Calderon* setting out a fulsome prejudice inquiry, as required by *Swenson*. *See Olivares-Calderon*, No. 4:21-CR-00082 dkt. entry 172 pp.3-6 (citing and applying *Swenson*).

So too in *Swiencinski*, the other case Judge Bennett cited in his dismissal of this case. In that case, the court "carefully considered the alternative to mistrial and did not act in an abrupt, erratic or precipitate manner" before granting the mistrial. *See United States v. Breimeister*, 133 F.4th 496, 508-509 (5th Cir. 2025) (citations omitted). Breimeister was one of four co-defendants tried with Swiencinski in cause No.4:18-CR-368. Prior to granting a mistrial based upon the discovery disclosures made at trial, Judge Bennett "conducted a thorough post-trial inquiry into the Government's discovery failures" that involved "multiple hearings and status conferences." *Id.* at 506.

In contrast, Judge Bennett gave the United States an overnight deadline to provide a response to Kuyoro's conclusory allegations and the

44

court issued its dismissal the following morning. ROA.957, 1034-36. Without any analysis of prejudice under *Swenson* and this Court's precedence, the court simply concluded that "looking at what *Brady* requires" "without question" the civil recoupment letters and the inspector's name and email address "should have been turned over" to the defense. ROA.1026; *see Derrick*, 163 F.3d at 810, 835 (reversing dismissal of indictment where district court summarily determined that discovery "should have been produced" without independent analysis of record evidence for prejudice). Because the district court failed to conduct an independent analysis of the evidence to support prejudice in either its oral ruling or written order, reversal of the dismissal order and reinstatement of the indictment is warranted. *See Swenson*, 894 F.3d at 683 (*citing Morrison*, 833 F.3d at 508); *Derrick*, 163 F.3d at 810; *Chesser*, 795 F. App'x 242, 244-45.

Nevertheless, no prejudice exists on the facts here. With respect to the civil recoupment letters, Kuyoro cannot establish prejudice because defense counsel had time to review the two letters before cross-examining Special Agent Johnson. ROA.871. Moreover, defense counsel knew from the January 2024 emails between Special Agent Johnson and the FEMA

accounting technician that Kuyoro had not repaid FEMA a dime, so the absence of FEMA's 2020 letters asking for repayment was not prejudicial. ROA.382-85, 1342; *see United States v. Sipe*, 388 F.3d 471, 487 (5th Cir. 2004); *United States v. Dennison*, 891 F.2d 255, 260 (10th Cir. 1989); *United States v. Campagnuolo*, 592 F.2d 852, 861 (5th Cir. 1979). Indeed, defense counsel chose not to use the letters after he had reviewed them, undermining any potential prejudice argument. ROA.873; *see United States v. Hankton*, 51 F.4th 578, 603 (5th Cir. 2022) (rejecting prejudice showing under *Swenson* because the defendant received material mid-trial and could put it to effective use at trial); *United States v. Houlihan*, 92 F.3d 1271, 1290 (1st Cir. 1996) (finding no prejudice in delayed disclosure of documents because they could still be used during trial).

With respect to the inspector's email address, Kuyoro offered mere speculation that contact with the inspector would have produced exculpatory evidence and testimony. *See Swenson*, 894 F.3d at 683 (citing *Stanford*, 823 F.3d at 841); *Chesser*, 795 F. App'x at 245. This Court has rejected as speculative the argument "preparation and strategy would have been entirely different" but for the tardy disclosure of documents. *See Swenson*, 894 F.3d at 683; *see also Chesser*, 795 F.

46

App'x at 245.    Sister circuits agree that claims of different cross-examination tactics or strategy are insufficient to establish prejudice from a delayed discovery disclosure. *See United States v. Osorio*, 929 F.2d 753, 760 (1st Cir. 1991).  The overwhelming evidence at trial established that "5666 Howell Street C" did not exist, all Kuyoro's supporting documents were fraudulent, and she called FEMA the day before the alleged inspection to report the non-existent property's demolition. ROA.791-93, 813, 837-43, 848, 890-93, 901-03.  Any evidence about the alleged inspection of non-existent "5666 Howell Street C" could only damage the defense.    Finally, Kuyoro herself could have exercised reasonable diligence to find the inspector who allegedly inspected the non-existent "5666 Howell Street C" in her presence.  *See Sipe*, 388 F.3d at 487; *Campagnuolo*, 592 F.2d at 861.

Even assuming that Kuyoro was prejudiced by the trial disclosures — which she cannot show on these facts — the "usual remedy" for a *Brady* violation is a new trial, a remedy the district court rejected.  *See Swenson*, 894 F.3d at 684 (citing *United States v. Brown*, 650 F.3d 581, 588-59 (5th Cir. 2011)).

47

3. The district court's inherent supervisory powers did not support dismissal in the absence of a prejudice finding and based upon facts in two unrelated cases.

A district court may exercise its inherent supervisory powers to remedy a violation of a recognized right, to preserve judicial integrity, and to deter illegal conduct. *United States v. Hasting*, 461 U.S. 499, 505 (1983); *United States v. Ornelas-Rodriguez¸* 12 F.3d 1339, 1349 (5th Cir. 1994) (citing *Hasting*). If the use of its supervisory power conflicts with constitutional or statutory provisions, its use is strictly prohibited. *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988). "To allow otherwise 'would confer on the judiciary discretionary power to disregard the considered limitations of the law it is charged with enforcing.'" *Id.* (citing *United States v. Payner*, 447 U.S. 727, 737 (1980)). To the extent the district court predicated its dismissal on its inherent supervisory powers, this Court reviews that basis for an abuse of discretion. ROA.393, 1034; *see Swenson*, 894 F.3d at 682. Even under this deferential standard, the court erred for three reasons.

First, the Supreme Court recognizes that a "district court exceeds its powers in dismissing an indictment for prosecutorial conduct not prejudicial to the defendant." *Bank of Nova Scotia*, 487 U.S. at 255. Even

48

where the court concludes that prosecutorial misconduct is deliberate (absent here), the dismissal of an indictment without demonstrable prejudice is "plainly inappropriate." *See United States v. Morrison*, 449 U.S. 361, 365 (1981).

Likewise, this Circuit has recognized that "even in the case of the most egregious prosecutorial misconduct, an indictment may be dismissed only upon a showing of actual prejudice to the accused." *Swenson*, 894 F.3d at 684 (internal quotations and citations omitted). Sister circuits agree that the dismissal of an indictment under supervisory authority is justified only where the defendant is substantially prejudiced, and the government flagrantly disregarded the limits of professional conduct. *See United States v. Wright*, 913 F.3d 364, 371-72 (3rd Cir. 2019); *Fahie*, 419 F.3d at 259; *United States v. Ross*, 372 F.3d 1097, 1110 (9th Cir. 2004); *United States v. DeCoteau*, 186 F.3d 1008, 1010 (8th Cir. 1999); *United States v. Santana*, 6 F.3d 1, 11 (1st Cir. 1993); *United States v. Accetturo*, 858 F.2d 679, 681 (11th Cir. 1988); *United States v. Griffith*, 756 F.2d 1244, 1249 (6th Cir. 1985).

Here, as discussed above, the district court never found that Kuyoro suffered actual prejudice from the government's mid-trial disclosures.

49

This failure alone constitutes an abuse of discretion. *See Bank of Nova Scotia*, 487 U.S. at 255; *Swenson*, 894 F.3d at 684; *United States v. McKenzie*, 678 F.2d 629, 631-32 (5th Cir. 1982); *Campagnuolo*, 592 F.2d at 865.

Second, even where a district court finds that discovery violations caused actual prejudice and proceeds to assess whether to exercise its "broad discretion" to impose a sanction, the court must carefully weigh the so-called *Garrett* factors. *United States v. Garrett*, 238 F.3d 293, 298 (5th Cir. 2000). It is a mandatory requirement in this Circuit that the district court must "fully and thoughtfully address" each of the factors prior to imposing a sanction for a discovery violation. *Id.* Those factors include: (1) the reasons why disclosure was not made; (2) the amount of prejudice to the opposing party; (3) the feasibility of curing such prejudice with a continuance of trial; and (4) other relevant circumstances. *Id.* (citations omitted).

Here, the district court was aware of but ignored its duty to consider the *Garrett* factors in either its oral ruling or written order. *Cf. Olivares-Calderon*, No. 4:21-CR-00082 dkt. entry 172 pp.3-6 (discussing and applying *Garrett* factors). In *Swenson*, this Court found an abuse of

discretion when the district court dismissed the indictment upon a challenged discovery violation without "expressly considering the *Garrett* factors" in either its pretrial conferences or written orders. *See Swenson*, 894 F.3d at 684. This Court should follow the same course here.

In any event, an application of the *Garrett* factors to the facts here do not support the extreme sanction of dismissal. The reason for the nondisclosures was not the result of any nefarious or malicious intent, as the district court consistently acknowledged. ROA.392-93, 1035-36, 1057. As for the 2020 civil recoupment letters, the prosecutor explained that they were not created at the time when the FEMA file was certified in 2019 and given to defense counsel. ROA.856, 873, 1336. An updated file was never requested because the evidence comprising the United States' case-in-chief was contained in the 2019 certified file. ROA.856, 873.

As for the inspector's email address, the prosecution team was unaware that Special Agent Johnson had sent an unanswered email to inspector of the non-existent property. ROA.1048. Even Special Agent Johnson had forgotten about the failed communication attempt because it was in the sent box of his email, and it did not contain Kuyoro's name

51

in the subject heading.  ROA.1048.  When the prosecution requested shortly before trial that the Special Agent turn over all email communications to the defense this unanswered email did not turn up. ROA.1048.

The court never examined whether the trial-disclosures prejudiced Kuyoro, as required by *Garrett*.  They did not, as discussed in the *Brady* portion of this brief.

Further, a continuance would have been highly feasible under *Garrett*.  As for the recoupment letters, totaling 6 pages, the court's brief recess to allow defense counsel to examine the letters before Special Agent Johnson's testimony cured any potential prejudice.  ROA.872.  And Kuyoro elected not to use the letters after defense counsel had reviewed them.  ROA.873.

As for the inspector, a one or even two-day trial continuance would have been feasible for the defense to use the email or to contact FEMA for more information about the inspector who allegedly inspected the non-existent property.  The United States would have assisted in such efforts had the prosecutors been given any indication that Kuyoro wanted to contact the inspector.  Insofar as the court implicitly touched on some

of these *Garrett* factors, the court seemed to recognize that they counseled *against* a severe sanction. ROA.1035, 1058.

Third, even where a district court properly decides to impose a sanction for a discovery violation, it must "impose only that sanction which is the least severe way to effect compliance with the court's discovery orders." *Garrett*, 238 F.3d at 298. In *Garrett,* this Court concluded that the district court's sanction of excluding witnesses was "excessive" and "an abuse of discretion" in part because "a brief continuance would have cured any prejudice, and other sanctions were available to ensure that the prosecutor would comply with the district court's discovery orders." *Id.* at 301. As noted, the district court agreed that considering only the facts of this case, a continuance would arguably have addressed defense counsel's complaints. ROA.1058.

To the extent that the sanction here was designed to be a "collective sanction" against the United States for discovery violations in two unrelated cases with different prosecutorial teams (one team not from the USAO-SDTX), the United States is unaware of any precedential support for such a sanction. The district court itself did not cite any such

case, as opposed to cases addressing its more general supervisory authority.  ROA.393.

Even against allegations of long-standing misconduct, prejudice must nevertheless exist under *Hasting* and *Bank of Nova Scotia* before an indictment can be dismissed.  *United States v. Lamela*, 942 F.2d 100, 103-04 & n.7 (1st Cir. 1991); *United States v. Woodley*, 9 F.3d 774, 777 (9th Cir. 1993); *United States v. Isgro*, 974 F.2d 1091, 1096-99 (9th Cir. 1992); *Osorio*, 929 F.2d at 755, 762-63.

As this Court has recognized, the Supreme Court in *Hasting* condemned a collective punishment "to control executive conduct rather than to redress the cognizable prejudice to the defendant."  *See United States v. Williams*, 874 F.2d 968, 976 n.23 (5th Cir. 1989) (discussing *Hasting*).  In *Hasting*, the Court of Appeals reversed convictions where the prosecutor commented on the defendants' testimonial rights in violation of *Griffin v. California*, 380 U.S. 609, 613-14 (1965).  The appellate court sidestepped the harmless error inquiry and focused on the "failure generally of prosecutors within its jurisdiction to heed the court's prior admonitions about commenting on a defendant's failure to rebut the prosecutor's case."  *Hasting*, 461 U.S. at 504.  In its decision,

54

the appellate court specifically referenced a prior decision where it had discussed the problem of prosecutorial commentary on the defendant's silence as one that "continues to arise with disturbing frequency throughout this circuit despite the admonition of trial judges and this court." *Id.* The Supreme Court held that the appellate court erroneously disciplined the prosecutor and warned other prosecutors for what it perceived to be continuing *Griffin* violations. *Id.* The Supreme Court reversed the appellate court's exercise of supervisory power without examining whether harm had occurred in the case before it. *Id.* at 504-05. The Court noted that the consideration of deterrence in the exercise of inherent power is thwarted without first examining the impact the error has on the facts of the case under review. *Id.* at 506-07.

Later, the Supreme Court relied upon *Hasting* to reverse the district court's dismissal of an indictment under its inherent supervisory power of deterrence without examining prejudice to the defendant. *Bank of Nova Scotia*, 487 U.S. at 255-57.

The district court's repeated recitation that "I meant exactly meant what I said" in *Olivares-Calderon*, namely, that "any future conduct" "could lead to dismissals" confirms that the court intended to enforce its

55

dismissal warning. ROA.956, 1034; *see Hasting*, 461 U.S. at 504. The comment that it was "putting down a marker" for himself and his colleagues evidences the court's intent to superintend the discovery practices of the government more generally, rather than hewing closely to established judicial doctrine or the Federal Rules. ROA.1035; *see Bank of Nova Scotia,* 487 U.S. at 255-56 (citing *Hasting*, 461 U.S. at 506-07).

In sum, the district court's explicit escalatory regime of sanctions for delayed disclosures, untethered from the requirements of *Bank of Nova Scotia* and *Griffin* lacks a legitimate foundation and oversteps the separation of powers. *See Bank of Nova Scotia*, 487 U.S. at 254-56; *Isgro*, 974 F.2d at 1097.

## <u>CONCLUSION</u>

This Court should reverse the district court's dismissal order and remand for reinstatement of the indictment.

Respectfully submitted,

NICHOLAS J. GANJEI
United States Attorney

CARMEN CASTILLO MITCHELL
Chief, Appellate Division

s/ *Lauretta Drake Bahry*
LAURETTA DRAKE BAHRY
Assistant United States Attorney
1000 Louisiana, Suite 2300
Houston, Texas 77002
Phone: (713) 567-9102
Fax: (713) 718-3302

ATTORNEYS FOR APPELLANT

## CERTIFICATE OF SERVICE

I, Lauretta Drake Bahry, Assistant United States Attorney, hereby certify that on May 28, 2025, an electronic copy of the Appellant's Brief was served by notice of electronic filing via this court's CM/ECF system upon opposing counsel, Assistant Federal Public Defender Scott A. Martin.

Upon notification that the electronically filed brief has been accepted as sufficient, and upon the Clerk's request, seven paper copies of this brief will be placed in the United States Mail, postage prepaid, addressed to the Clerk. *See* 5th Cir. R. 25.2.1, 31.1; 5th Cir. ECF filing standard E(1).

s/ *Lauretta Drake Bahry*
LAURETTA DRAKE BAHRY
Assistant United States Attorney

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains approximately 10,669 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 365 in Century Schoolbook font, 14 point font for text and 12 point font for footnotes.

3.  This brief complies with the privacy redaction requirement of 5th Cir. R. 25.2.13 because this brief has been redacted of any personal data identifiers.

4.  This brief complies with the electronic submission of 5th Cir. R. 25.2.1, because this is brief is an exact copy of the paper document.

5.  This brief is free of viruses because this brief has been scanned for viruses with the most recent version of the McAfee Endpoint Security scanning program.

s/ *Lauretta Drake Bahry*
LAURETTA DRAKE BAHRY
Assistant United States Attorney
Date: May 28, 2025

59